Thank you, Your Honor. Mr. Graham. Thank you, Your Honor. It's Jason Graham for the appellants, for the defendants below, where we lost on summary judgment. The benefit of going last is that I was able to see how active the bench was and cross off about half my outline. As the court knows, we're here today because, in our view, Regents Bank discriminated against Mrs. Phoenix and Parawigle Partners by breaching its loan agreements and implied covenant of good faith and fair dealing with them because she was married to Mr. Phoenix in order to This case reminds me of Maslow's gavel, that to a hammer, everything looks like a nail. This was not a case where judgment should have been entered as a matter of law on both the legal and equitable claims. There were many issues of material fact in the record, meticulously cited, cross-referenced in tabular format, and two appendices. If the district court entered one joint and several judgment against all defendants, Grenier Relief not even requested— It seems to me the district court made an error, probably clerical error, that you could have brought to the attention of the district court in a post-judgment motion, but you're not obliged to. You could raise it for the first time on appeal that Parawigle Partners and Lisa Phoenix are not judgment debtors for the $540,000, and that needs to be corrected, it seems to me. There's not really much dispute, it seems to me, that they're not proper debtors for that amount, right? Correct, Your Honor. And we did bring it up in the attorney's fees phase of the case to the district court. We did not bring a Rule 59 motion because with all— You could have. We could have. All of the— I don't know why you didn't. The district court would have clearly corrected it, wouldn't it? Well, and I'd like to respond to that, Your Honor. The first reason is— It doesn't really matter. It needs to be fixed. Correct. And one reason we didn't is that I wanted to show this panel that it's kind of a tip— Why waste our time by saying that somehow this prejudices our view of how the district court handled the rest of the case? Well, it is the tip of the iceberg, Your Honor, and it's the tip of a big iceberg. And it helps explain other things like the fact that the court granted summary judgment saying that we didn't dispute things that we clearly did dispute. It granted a second summary judgment— Second summary judgment motion response to our motions in Lemonade heading into a bench trial. It changed the words is admitted to is denied in Rule 8 when the plaintiff didn't respond to allegations in our operative counterclaim. But also, it was the issue of we were concerned with the deadlines that we wouldn't be able to— We had to file a notice of appeal and we had to raise things. But, Your Honor, going to the admissions and the pleadings, which is an issue on appeal here, when the operative counterclaim was allowed to be filed by the district judge, the bank filed an answer to the counterclaim and it was late. There was no leave requested to file it late. And then the answer to the counterclaim, not only was it filed late without leave requested, it just didn't answer a whole section of the allegations. Forty-five through seventy-eight of the allegations were not answered. Now, the— The earlier answer didn't respond to those allegations, right? Well, no, Your Honor. The appellee says that in their brief, but if you kind of do a forensic accounting of all the prior pleadings, there are, in fact, some of them were in prior pleadings, but some of them were not. The numbered allegations, fifty-five through sixty-three, were never responded to in any of the prior answers to the counterclaim. Except a lot of those are, I mean, if you actually look at them, they're somewhat conclusory, and conclusory allegations don't really hold any water. Some of them were, but some of them are factual issues, and if I could just give an example, one of them that was not responded to had to do with an issue that went right to the heart of the case, and it was this issue of the cross-default of the loan, and this will bind to some of the other issues that are on appeal. So the very first, what we call a false default letter that accelerated the loan, was where Regions Bank sent a default and acceleration letter to Perwinkle Partners saying, your husband's loan, the law firm's loan, is in default because it matured and he didn't pay it. Therefore, your Perwinkle Partners loan is in default because it's in cross-default. One of the allegations that was not denied alleges this cross-default, and it wasn't responded to and wasn't denied after discovery is closed. This is the response of the amended counterclaim, and that didn't surprise us because in the evidence we cited in the brief, their own witnesses said, well, you know, actually there is no cross-default language in the loan documents. So it didn't surprise us that they didn't bother to deny that allegation because that was a key factual issue in the case that they later admitted to. And what is odd in terms of error of the district court that needs to be reversed is the district court in its summary judgment order said, defendants do not dispute that they were in default under the relevant notes and guarantees. Well, yes, we did. We said all along in response to summary judgment, by citing this kind of testimony, that their own people said that the defaults they alleged were, in fact, not real defaults. That first default letter? Were not real defaults. In other words, they're defaults, but they're the kind of things that would have been overlooked in the past. Well, not even just that. They said that there was a cross-default apparel local partners loan, but then their own loan officer said, well, the loan documents do not have cross-default language, therefore, in fact, it was not in default. The other default was, you're supposed to give us financial information, and then they admitted, well, we had that information. So the defaults that they based their acceleration on didn't exist. What about the tax payments? I'm sorry? What about the tax payment? Okay, so there's several reasons why the tax issue was not a real default. One was that first acceleration letter was never decelerated, so we've got at least fact issues that it was improper to accelerate because we have evidence that those were not really in default. If you don't decelerate and allow the borrower to make payments, we cited a case in the briefs called Crease. It's an old Florida case that says, well, if you're accelerated, why would you bother making tax payments? Who would do that? And that case is in the briefs. So that's number one. Number two is, you do have a course of dealing. We have fact issues on a course of dealing where they had long allowed late payment of tax payments. So that's two. Let me ask you something. If you think that it was wrongly accelerated, why wouldn't you make the tax payments in order to preserve your property? Well, because they're claiming that we're going to foreclose, it's an accelerated loan, you have an entire balance. So why dump another $25,000 into the property? Because if you think that you have a good legal case to be able to demonstrate factually that they're incorrect, why wouldn't you want to preserve the property and not create additional problems? So that goes to the third reason why the property tax issue isn't a real issue, that under Florida law, unlike Alabama law where Regents is headquartered, there are no real penalties for not paying the taxes. You get charged interest. There's a difference between interest and penalties, and that goes to the language of the loan documents. Do you not have a lien? A property tax lien? Yeah. I believe there's a lien, but the language of the loan documents says... You don't think the encumbrance of property by a lien is a real issue? Maybe an issue is not a penalty. So the language of the loan documents, because it says an event of default, is when there are penalties assessed for property taxes. It seems to me that the argument you've been making about the tax is not so much an argument that they're disputed issues of fact, but you're saying that as a matter of law, that you were relieved from the obligation to pay the taxes when they gave their notice to accelerate. Is that the argument? Is it a legal argument, or is it a factual? Is there a disputed issue of fact? It goes back to the disputed issue of fact as to whether it was properly... Is there a dispute of evidence as to whether those two claimed defaults were actually live issues of default? So they claimed two defaults. What's the dispute of fact? It seems to me whether the tax was paid or not is undisputed. It was not paid, and there was actually... It wasn't paid, right? It was not paid by Periwinkle. It was paid by... The dispute of fact... The question is, what's the legal result of that? Well, that's part of the issue, but there's also a fact issue as to, under the loan documents, Regents paid the taxes and charged interest, and the case law out there is if they elect their remedy to do that under the Shred case that we cited... No, dispute of fact is like when you have one party says A, and the next party says B, and we have to resolve who's telling the truth. I don't see where there are disputed issues of fact in this case. It appears to me that all the facts are undisputed. The only question is the legal effect of them. Well, if I could respond to that, but... I don't see where the brief identifies any disputed issues of fact. If I could respond to that, Your Honor, the dispute of fact is when they sent the notice of default, the first one, and accelerated the loan. Did the allegations of... The factual allegations of those letters that we were in default, did we submit contrary evidence on those issues to create a disputed issue of fact as to whether we were in default at the time, justifying their acceleration? If that acceleration was invalid, the rest of the house of cards falls because all the subsequent defaults are invalid. That's the dispute of fact, Your Honor. Okay, Mr. Graham. Ms. Anthony will be here for me. Ms. Graham, save five minutes for rebuttal. Do you agree that the judgment needs to be clarified? Excuse me? Corrected? Do you agree that the judgment needs to be corrected? Yeah, Parawinkle Partners and Lisa Phoenix, they're not really... They shouldn't be judgment debtors for that amount, right? Correct, Your Honor. At best, we think this was a scrivener's error, and none of the parties have acted like... Pretty vaguely. If you're the... We've treated as the defendants as to count one and two are the ones that the judgment was entered against. We've never taken the position in execution that we were going to go after Lisa Phoenix or Parawinkle on counts one and two with respect to the legal outsource obligation. You don't have an objection to that being corrected? No, Your Honor. So that's... May it please the court, back up for a second. Stephanie Anthony for Regions Bank. We believe this appeal focuses on extremely basic commercial lending relationship involving two loans. There's the legal outsource loan, which is secured by defunct law firms' assets, and then there's the Parawinkle loan, which is secured by a strip center. This case is interesting in that counsel of record is a guarantor on both loans, principal of both corporate obligors. He closed the Parawinkle loan. He submitted the applications for the loans to Regions. You know, I thought this case was interesting because it brings up an ECOA claim that the Supreme Court split evenly on. Your Honor, I suspected that might have been something that was of interest to the court. However, I don't think that it should be decided today on this case because... Well, how could we avoid deciding that issue? Well, Your Honor, if you look at the counterclaim that was brought before the district court and what has been argued here in the briefs, it's a completely different factual situation. So, they haven't even advanced the right argument in our position, Your Honor. Further... Well, maybe I misunderstood. I thought that their argument depends in part on whether guarantors are covered under the ECOA. Do you agree with that? They do talk about that, but... Well, do you agree that their argument depends in part on that? No, Your Honor. We think that Judge Magnuson, when he made his ruling, he found that there was no evidence of discrimination. So, although he mentioned Hawkins, he never even had to get there as to whether or not a guarantor was an applicant because he found no evidence of discrimination. So, he never had to get there. But the district court said that the obligors offered no evidence that persons similarly situated to Lisa Phoenix were treated more favorably in their credit applications, right? Correct, Your Honor. So, even if a guarantor could be an applicant, it wouldn't make a difference, is what you're saying. Correct, Your Honor. They just don't get there. It's not that we'd really be able to choose whether to address it that way or not, right? We could say a guarantor is not an applicant in a firm on that ground. But if we thought a guarantor were an applicant, we'd still have to get to that issue of whether there's enough here to suggest discrimination. Your Honor, I think... Is that right? I don't think you get there because in the situation that was argued before the district court, it had to do with the Periwinkle loan. So, when the Periwinkle application was presented to Regions, depending on which allegation of the defendant's counterclaim you look at, one allegation says Chuck Phoenix and Periwinkle applied. Another one says Lisa Phoenix and Periwinkle applied. So, if you read them together, I guess they both applied, and you can't discriminate when they're both applying. And the way the package was presented to Regions was approved, and the credit was extended. There's no adverse action. There's no discrimination. But I think what Judge Pryor's asking is, he's saying the only way that we wouldn't get to whether we need not decide whether guarantors are covered under ECOA, we can assume without deciding that they are, because even if they are, there were no adequate allegations of discrimination. I don't mean to... That's right. Yes, Your Honor. Of course you can decide and take that position one way or another, but... We'd have to get to that issue if we were to decide first that an applicant that a guarantor can be an applicant, okay? Then we'd have to reach the issue, well, is there enough here to allege discrimination, right? I understand what you're saying, Your Honor. The way I read... But we don't have... I mean, we can do this a couple different ways. We can say a guarantor is not an applicant. End of the story. Affirm. Right? Yes. That's one way. Yes. If a guarantor is an applicant, oh, that doesn't resolve it. Then we have to say, is there enough here to suggest there was discrimination? No, you would say, right? Yes. Because no allegation about a similarly situated guarantor who was treated differently, right? Correct, Your Honor. And the other interesting thing here is that when you look at their brief, though, they're arguing that there was discrimination because when the legal outsource loan matured and Regions Bank said, we can't extend the maturity on this because legal outsource is defunct. It's not creditworthy. You need to provide an additional source of repayment, collateral, something to that effect. They're saying in their brief, which they never raised in front of Judge Magnuson, that that is the ECOA violation. So they can't do that. They can't raise something for the first time in their briefs here that they never even raised in front of the lower court. And we think that your case, the access case, is on point there. Issues not raised in the district court should not be raised for the first time on appeal. So I don't think that's appropriate before Your Honor because of the fact that they dropped that argument and tried to raise a new argument in front of Your Honor. One of the other points, unless you have additional questions for me on that, that I wanted to make were, they mentioned that they don't believe that Regions Bank answered all of the allegations. And we would contend that we did. If we could do it over again, maybe we would have alleged them all in one document or pleading for the court. But I have gone through all of the answers that we filed, and they all match up to each count. Whether certain pleadings are timely or not, whether the pleadings answer each other or not, to me is all kind of beside the point when you get a summary judgment. And the question then is whether the record shows that there's a genuine issue of material fact. And that's where we are, right? We have a summary judgment here, right? We have a record that you say presents no genuine issue of material fact. Your adversary says it does present genuine issues of material fact. I'm not sure what those disputes of fact are. But whether a certain answer responded adequately or not really doesn't help us resolve that, does it? Understood, Your Honor. But to the extent they're alleging that we made judicial omissions because we didn't answer, we would submit to Your Honor that we did, in fact. And I painstakingly went through every count and matched it up. Granted, the numbers of the answer might not match the allegations, but it matches verbatim the language that was asserted. So with respect to the next issue, then, it was whether or not there's material issues of fact. We don't believe that just because there's 20 pinpoint sites that necessarily – or 200, sorry, not 20 – 200 pinpoint sites that that necessarily means there's a genuine material issue of fact. The court found that the defendants – What matters is whether when you go to the pinpoint sites, whether they create a genuine dispute or not, right? Yes, Your Honor, and we have done that. The district court found that the defendants did not dispute the defaults under the notes and guarantees, and we believe that is a correct finding. But the defendants have us – they invite us to go through a voluminous record, a haystack of pleadings looking for needles that may or may not create a genuine issue of fact. We don't believe it's here. We don't believe that it's this court, the district court's, region's burden to find that needle. There are no disputed issues that I've even heard today that have any genuine merit that would be reason to overturn the summary judgment. Region's bank – You know, Ms. Anthony, you're not always obliged to use all the time that's been afforded. I'm happy to rest on our briefs. I think we – If there's something burning that you really feel like you need to say, we're happy to hear it. I don't think I hear any questions from either of my colleagues. Maybe my one other point was that Mr. Phoenix and the defendants moved for authority to file a new initial brief, and that was denied. Regions answered or responded to that initial brief. And then when the reply brief came in, interestingly, a lot of the pages and paragraphs that were in the proposed initial brief surfaced in the reply brief. So we think that they have attempted to raise new arguments via the reply brief that were not raised and should not be considered because we haven't even had an opportunity to address them in briefing, and that's not the purpose of the reply brief. Got it. Thank you, Your Honor. Thank you, Ms. Anthony. Mr. Graham. Thank you. If I could respond to some of the concerns I heard the panel raise. On the ECOA issue, some of the evidentiary issues I heard Judge Prowell raise, we pointed to evidence in the record from the deposition testimony that the bank only requires business owners to sign guarantees and not non-business owners. So we believe that we tied that together with asking Lisa Phoenix, the spouse of a non-business owner, not a business owner of legal outsource, to provide collateral for her husband's loan. Do you have any evidence that a person who was similarly situated to her was treated more favorably? You're talking about a specific individual? No, Your Honor. We had the bank representative saying it was their policy not to do what they did to Lisa. Okay. That ain't good enough. That may be their policy, but if in fact they never applied it, it doesn't matter. You've got to show me that they treated someone else similarly situated differently to establish that she was discriminated against, I think. No? We do not have that type of evidence. I did not believe that was required. But on the guarantor issue, I would just state that there is a circuit split that I believe the Eleventh Circuit should weigh in on. The Supreme Court... You might not like how we'll weigh in on it. I understand. The Supreme Court, you know, affirmed Hawkins divided 4-4 without a pit in. The circuits I agree with, but I don't know that we should go there. I could guess, Your Honor. But I would just state that the, you know, the requisite agency has expanded the definition of guarantor under the authority granted to it by Congress. This was not just a statute that a rogue agency went out and expanded. It went through the rulemaking procedures pursuant to statutory authority so these regulations may contain but are not limited to such classifications, differentiation, or other provision and may provide for such adjustments and exceptions for any class of transactions. That's 15 U.S.C. 1691B that we cited. So pretty broad discretion given the agency. On the statement in terms of the facts and dispute, I just want to kind of list some of the facts that we cited in our brief where we did provide disputed facts on the default issues. We cited a deposition testimony that, you know, the bank was not aware. This is bank testimony. This was their 30B-6. They're the loan officers. They were not aware of any specific cross-default language written in any of the defendant's loans. The loans were not cross-collateralized. There's no cross-default language. I mean, the agreements are whatever they are. You read the agreements for whatever they say. Whether a 30B-6 representative is aware of something or not doesn't, to me, establish anything with respect to a dispute of fact. The court would read the agreements as a legal matter for whatever they say. And there's no cross-default language in the agreements, and the district court granted them summary judgment because the court held that there was a cross-default. That's error, Your Honor. Well, we can look at that, but that's not a dispute of fact. Maybe it's just an error of law. Your Honor, summary judgment should not have been granted. We should have been entitled to a trial where the court could have heard evidence on these matters. The loan was wrongfully accelerated, we believe, for discriminatory purposes. Once the loan was wrongfully accelerated without deceleration under Florida law, everything that happened after was through the poison's tree, to borrow a metaphor from criminal law. In Florida, foreclosure is an equitable matter, and we would have been entitled to a trial, even a bench trial, on the equitable issue of foreclosure. And we were robbed of that. We were on our way to a bench trial, and instead there was a summary judgment order, really in response to the motions in Limine, saying, well, now I'm going to grant foreclosure as a matter of law, too. And we believe that the case really got bench-tried on the motions without giving us a chance to present testimony and evidence where credibility could have been weighed on those equitable matters. And we respectfully ask the court to reverse and vacate the district court's order and remand it for a bench trial on those issues. Thank you. Thank you. We'll be in recess until tomorrow morning. All rise. Weather permitting.